DOMENICO RONIO *et ux. vs.* PETRINA LOFFREDO.

JUNE 13, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon JJ.

CAPOTOSTO, J. This is a bill in equity to enjoin the respondent from entering land of the complainants and disturbing them in the full use and enjoyment thereof. The cause was heard in the superior court on bill, answer and proof. At the conclusion of the hearing the trial justice denied and dismissed the bill. The cause is before us on complainants' appeal from the entry of a final decree to that effect.

The parties are the owners of adjoining premises. The matter here in dispute concerns a strip of land 86.3 feet long by 9 feet 9 inches wide, hereinafter called the strip, along the lateral boundary line between the two parcels. Except for a crude pen-and-ink sketch, which does not

indicate the points of the compass, and the testimony of witnesses in general language, we have no deed, plat or survey to assist us in describing the premises involved with greater particularity. However, it appears in evidence that according to the land records the respondent owns lot 23 and the complainants own lot 24 on the "Homestead Plat," and that, according to that plat, the strip is part of lot 23. Both lots front on Ethan street in the city of Providence.

The complainants bought their land from one Dalo in 1923. At that time the premises were apparently enclosed on the sides by fences 49 feet 9 inches from each other, that is, one of the fences was actually on lot 23 approximately 9 feet 9 inches from the division line between that lot and lot 24 as platted. In the agreement of purchase the land to be conveyed to complainants was described as extending "from fence to fence," whereas the description in the deed covered only lot 24 as it appeared on the plat. The complainants, who were persons of limited education, believing that the conveyance was in accord with the agreement, occupied and claimed title to the land from fence to fence.

About one year thereafter Dalo, the grantor, brought a bill in equity to recover the 9-foot-9-inch strip of land which was not covered by the deed. Upon a cross bill by the present complainants, who were respondents in that cause, the superior court found for them and ordered Dalo to convey to them by warranty deed the strip in question. From the entry of a decree in accordance with that decision Dalo appealed to this court, which appeal was dismissed on motion by the present complainants in 1938. Dalo, however, never executed a deed as ordered in that decree.

We point out here that the land on both sides of the fence on lot 23, as platted, sloped from the rear towards Ethan street, and that, for some distance as one approached that street, there was a deep hole extending over both lots 23 and 24. When the superior court decided the Dalo equity suit in favor of the present complainants they built a stone wall in 1925 alongside of that fence and eventually filled in the

hole on their side of the wall to the level of the street. The land so reclaimed was thereafter occupied and used by them in various ways without interference from anyone until some years after the respondent bought lot 23 in December 1941.

The respondent did not testify. Her case rests on the testimony of a title examiner and of her son Pasco Loffredo, who acted as her duly authorized agent in the purchase of lot 23. The title examiner testified that his search of the land records revealed no deed to the complainants of the strip in dispute and no notice of any pending suit with reference thereto.

It clearly appears that respondent's married daughter had been living in complainants' house on lot 24 for some time prior to 1941 and that both the mother and Pasco visited her frequently at that place before the respondent bought lot 23. Pasco testified that, through a real estate broker, he purchased three parcels of land for his mother, among which was lot 23; that he made no inquiry as to any boundaries nor did the broker point them out to him; that before the purchase, notwithstanding the existence of the stone wall, the adjacent ancient fence, and the open use and occupation of the land contiguous thereto by these complainants, a situation plainly visible and known to him, he did not have lot 23 surveyed nor make any investigation in the matter other than to have the land records examined by a title company.

Pasco further testified that lot 23 was surveyed *after* the conveyance; that at that time the complainants pulled out and threw away the stakes which the surveyor placed on their side of the stone wall; that, except for some discussion with reference to such occurrence, the respondent thereupon proceeded to gradually fill in the depression on her side of the wall; that thereafter, about 1945, she caused a temporary fence to be built upon or alongside of the wall "so the kids won't go where it was planted," apparently meaning on land used and occupied by complainants; and that such

fence was later replaced by the respondent with one of a more substantial nature. In 1949 complainants asked respondent's daughter, who had remained as their tenant, to pay them two dollars a month for parking her automobile on the strip in dispute. Upon learning of such request respondent then proceeded to erect an iron-link fence on complainants' side of the stone wall 9 feet 9 inches therefrom, which act resulted in the bringing of the present bill in equity.

In a short decision from the bench the trial justice found for the respondent. He referred therein solely to the evidence relating to the examination of the land records in behalf of respondent, pointing out that complainants had not only failed to secure and record a deed from Dalo of the strip in question in accordance with the final decree in the equity suit hereinbefore mentioned, but that they also had neglected to put on record any notice of the pendency of that suit. Basing his decision squarely on such incomplete view of the evidence he concluded that complainants had "slept" on their rights and were now seeking to deprive "an *innocent purchaser* * * * of the benefit of relying upon a Record Title. If the Record Title is defective or incomplete this was because of the complainant's own action." (italics ours)

The complainants' main contention is that the trial justice erred in finding that respondent was an "innocent purchaser" and that in so doing he misconceived or overlooked uncontradicted evidence which was of controlling force in the circumstances. We agree with that contention because before or at the time of purchase she had knowledge, actual or constructive, of complainants' open use and occupation of land adjoining to and for the entire distance of the fence and stone wall. In the special circumstances of this cause complainants' failure to secure and record a deed from their grantor, Dalo, or to put on record a notice of the equity suit hereinbefore mentioned did not make the respondent an "innocent purchaser," as the trial justice found. In so

doing he rested his decision on a conclusion which was in clear conflict with material and undisputed evidence.

It is generally held that open and notorious possession of land that is fenced is a fact putting all persons on inquiry as to the claim of the occupant. In other words, in the absence of statutory provision or actual notice, . such possession is generally considered constructive notice of the occupant's right or claim of right in and to such land. Ordinary prudence then requires that an intending purchaser of adjoining premises, which might include the land so occupied, make an investigation concerning the title or rights of the person in possession.

Speaking of a purchaser chargeable with constructive notice, the supreme court of Illinois in *German-American National Bank of Lincoln* v. *Martin,* 277 Ill. 629, at page 648, aptly said: "It is sufficient if the channels which would have led him to the truth were open before him, and his attention so directed that they would have been seen by a man of ordinary prudence and caution if he was liable to suffer the consequences of his ignorance. * * * Whatever is sufficient to put a party upon inquiry which would lead to the truth is in all respects equal to and must be regarded as notice." The case of *Schwoebel* v. *Storrie,* 76 N. J. Eq. 466, where the facts were quite similar to those in the present record, is to the same effect. See also *LaCombe* v. *Headley,* 91 N. J. Eq. 63. 55 Am. Jur., Vendor and Purchaser, §§687, 712, 713.

Before and at the time the respondent here purchased lot 23 she was fully aware that complainants were in open possession and use of the land up to an old fence and a stone wall running alongside thereof. Those structures, which were clearly visible even to a casual observer, plainly indicated a real or assumed division line between complainants' premises and the land which respondent intended to purchase. Yet, notwithstanding such obvious evidences which counseled caution and inquiry to a person of ordinary prudence, the respondent made no investigation before

purchasing lot 23, either by inquiry or survey, to ascertain the true and then existing condition with reference to the boundary line now in dispute. In the unusual circumstances of this cause it is our judgment that respondent was not an "innocent purchaser," as the trial justice found; that in law she was at least a purchaser with constructive notice of complainants' title in and to the strip of land hereinbefore described; and that the complainants are entitled to the relief prayed for in the bill.

The complainants' appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for the entry of a decree in accordance with this opinion.

*Herman D. Ferrara, Anthony A. Giannini,* for complainants.

*DiMascolo & DiPetrillo, Anthony DiPetrillo, Henry R. DiMascolo,* for respondent.